

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL L., | Case No.: 3:23-cv-2140-AHG |
| Plaintiff, | **ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW OF FINAL DECISION OF THE COMMISONER OF SOCIAL SECURITY** |
| v. | |
| LELAND DUDEK, Acting Commissioner of Social Security,[1] | |
| | **[ECF No. 15]** |
| Defendant. | |

Plaintiff Joel L. ("Plaintiff") filed this action on November 21, 2023, seeking review of the Commissioner of Social Security's ("Commissioner") denial of his application for Disability Insurance Benefits. ECF No. 1. The parties consented to proceed before a Magistrate Judge on November 27, 2023. ECF No. 5. Pursuant to the Court's Scheduling Order, the parties filed their Joint Motion for Judicial Review ("Joint Motion"), stating

---

[1] Leland Dudek became the Acting Commissioner of the Social Security Administration on February 16, 2025. Although Plaintiff originally brought this action against Former Acting Commissioner Kilolo Kijakazi, this case may properly proceed against Leland Dudek pursuant to 42 U.S.C. § 405(g).

their positions on the disputed issues in the case. ECF No. 15. The Court has taken the Joint Motion under submission without oral argument. ECF No. 11.

For the reasons set forth below, the Court resolves the Joint Motion in Plaintiff's favor, **GRANTS** Plaintiff's motion for remand, and **REMANDS** this action for an immediate award of benefits.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act on January 4, 2022, alleging disability due to the impairments of blind/low vision; posttraumatic stress disorder (PTSD), anxiety, and depression; traumatic brain injury; short term memory loss; hearing loss; and atrial fibrillation, tachycardia, and osteoarthrosis, with an alleged disability onset date of September 7, 2021. Administrative Record ("AR") 409–15, 230. The Commissioner denied the claim by initial determination on May 11, 2022, and again upon reconsideration on August 4, 2022. AR 277–81, 283–88. On August 10, 2022, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on May 11, 2023. AR 289–90; *see* 2005–46. Both Plaintiff and a vocational expert ("VE") testified during the hearing. AR 2010–45.

On July 12, 2023, the ALJ issued an unfavorable decision denying Plaintiff's application. AR 31–54. Plaintiff requested review of the ALJ's decision by the Appeals Council on July 11, 2023. AR 389–408. When the Appeals Council denied Plaintiff's request for review on October 24, 2023, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 405(h). *See* AR 7–14. Plaintiff timely appealed the Commissioner's decision to this Court for federal judicial review on November 21, 2023. ECF No. 1.

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed

only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard requires "more than a mere scintilla" of evidence, "but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). The standard is "highly deferential." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Thus, "'[w]here evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the decision was based on legal error, a court may not reverse an ALJ's decision if the error is harmless, which exists when it is "clear from the record that the ALJ's error was inconsequential to the ultimate nondisability

determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch*, 400 F.3d at 679 (citation omitted).

### III.    SUMMARY OF ALJ'S FINDINGS

#### A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 404.1520;[2] *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least 12 months; if not, a finding of nondisability is made and the claim is denied. *Id.*; 20 C.F.R. § 404.1520. *See also* 20 C.F.R. § 404.1509 (setting forth the 12-month duration requirement). If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed, and benefits are awarded. *Lounsbury*, 468 F.3d at 1114.

---

[2] Unless otherwise noted, all references to the agency regulations herein are to the regulations in effect at the time of the ALJ's decision. *See, e.g.*, SSR 16-3P, 2017 WL 5180304, at *13 n.27 (Oct. 25, 2017) ("When a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review."); *Anne B. v. Comm'r, Soc. Sec. Admin.*, No. 1:18-CV-02146-HZ, 2019 WL 6976034, at *8 n.3 (D. Or. Dec. 20, 2019) (collecting cases for the proposition that "[t]he applicable regulations are those in effect at the time the ALJ issued his decision").

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. 20 C.F.R. § 404.1520. The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work. *Lounsbury*, 468 F.3d at 1114. Therefore, the ALJ must determine the claimant's RFC before moving to step four.

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-9p, 1996 WL 374184, at *1 (July 2, 1996). It reflects the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of his impairments – even those that are not severe (*see* 20 C.F.R. § 404.1545(a)(1)-(2), (e)) – and must assess his "work-related abilities on a function-by-function basis[.]" SSR 96-9p, 1996 WL 374184, at *1; *see also Valentine*, 574 F.3d at 690 ("an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence" favorable to a claimant's position. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

An RFC assessment is ultimately an administrative finding reserved to the ALJ. 20 C.F.R. § 404.1527(d)(2). However, an RFC determination must be based on "all the relevant evidence in [a claimant's] case record" including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. A court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standards and substantial evidence in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). At step four of the disability analysis, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled, and the claim is denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving

that he is unable to perform past relevant work at step four. *Id.* If the claimant meets this burden, a *prima facie* case of disability is established. *Id.*

At step five, the burden then shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(1)-(2); *see also* 20 C.F.R. § 404.1520(g)(1). The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. § 404.1520(a)(4)(v); *Tackett*, 180 F.3d at 1099.

### B. The ALJ's Application of the Five-Step Process in this Case

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 7, 2021, his alleged disability onset date. AR 36. At step two, the ALJ determined that Plaintiff had the severe impairments of cervical, thoracic, and lumbar sprain/strain; migraine headache; obstructive sleep apnea; posttraumatic stress disorder; major depression disorder; panic disorder; and alcohol dependence. AR 36. The ALJ further noted Plaintiff's other non-severe medically determinable impairments of obesity and traumatic brain injury, and stated that he had considered all of Plaintiff's medically determinable impairments, including those that are not severe, when assessing his residual functional capacity. The ALJ also determined there was insufficient medical evidence in the record to support other medical conditions of tachycardia and gout as medically determinable impairments. AR 37. Finally, the ALJ found substance abuse was not a severe impairment and was not material to a finding of disability in this case. AR 37.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listing, noting in particular that he had considered Listings 2.04, 11.18, 12.04, 12.06, and 12.15. AR 37–38. Applying the psychiatric review technique for evaluating mental impairments at step three, the ALJ determined Plaintiff had mild limitations in the areas of understanding, remembering or applying information, and in

adapting or managing oneself, and that he had moderate limitations in the areas of interacting with others, and in concentrating, persisting or maintaining pace. AR 38–39.

Between steps three and four, the ALJ determined that Plaintiff had the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b), with certain exertional, postural, and mental limitations as follows:

> occasional climbing of ramps/stairs; occasional climbing of ladders/ropes/scaffolds, and occasional balancing, stooping, kneeling, crouching and crawling. Further, the individual must avoid concentrated exposure to bright light, loud noise, to vibration, and to fumes, odors, gases and other pulmonary irritants. The individual can understand, remember, and carry out simple, routine tasks, no interaction with the general public, only occasional work-related, non-personal, non-social interaction with co-workers and supervisors, and is limited to jobs requiring only simple work-related decisions; however, can keep pace sufficient to complete tasks and meet quotas typically found in unskilled work.

AR 39.

At step four, the ALJ concluded Plaintiff is not capable of performing his past relevant work as a Truck driver (medium exertion), Operations manager (light exertion), Home attendant (medium exertion), Dishwasher (medium exertion), or Car wash attendant (light exertion). AR 46. The ALJ concluded the demands of Plaintiff's past relevant work exceeded the RFC. AR. 46.

At step five, the ALJ considered that Plaintiff was a "younger individual" as of the alleged disability onset date and had at least a high school education. AR 46. The ALJ determined transferability of job skill is not material to the disability determination because using the Medical-Vocational Rules as a framework supports a finding Plaintiff is "not disabled" whether or not he had transferable job skills. AR 46. The VE testified, given Plaintiff's age, education, work experience, and RFC, he would be able to perform the requirements of representative occupations of Hand packager (920.687-018, light exertion), Assembler (706.864-022, light exertion), and Material Distributor (230.687-010, light exertion). AR 47. Based on the VE's testimony, the ALJ found that Plaintiff was

"capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 47.

Accordingly, the ALJ found Plaintiff had not been under a disability from September 7, 2021 through the date of the ALJ's decision, July 12, 2023. AR 47.

## IV.    DISCUSSION

Plaintiff raises two disputed issues in the Joint Motion: 1) whether the ALJ's step-five finding that Plaintiff has the ability to perform other work is supported by substantial evidence; and 2) whether the ALJ stated legally adequate reasons for rejecting Plaintiff's subjective symptom testimony. ECF No. 15 at 4.

### A. Whether the ALJ's Step-Five Finding is Supported by Substantial Evidence

Plaintiff first challenges the ALJ's determination at step five that Plaintiff could perform other work existing in significant numbers in the national economy based on the VE's testimony.

### 1.  Legal Standards for Step Five Analysis

"Once a claimant has established that he or she suffers from a severe impairment that prevents the claimant from doing any work he or she has done in the past, the claimant has made a prima facie showing of disability." *Tackett*, 180 F.3d at 1100. At step five, "the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration [his] residual functional capacity, age, education, and work experience." *Id*. (internal citation omitted); *see* 20 C.F.R. § 404.1560(c)(1)-(2).

Social Security Ruling 00-4p explains how ALJs must consider and incorporate the VE's testimony into the disability determination at steps four and five. The ALJ should "rely primarily" on the Dictionary of Occupational Titles (DOT or *Dictionary*), including its companion publication the Selected Characteristics of Occupations Defined in the

Revised Dictionary of Occupational Titles (SCO),[3] "for information about the requirements of work in the national economy" but may also use VE testimony "to resolve complex vocational issues." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Thus, to meet the agency's burden at step five, "the ALJ can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett*, 180 F.3d at 1101; *see also Gutierrez*, 844 F.3d at 806–07 ("[T]he ALJ may rely on an impartial vocational expert to provide testimony about jobs the applicant can perform despite his or her limitations."). For the VE's testimony to constitute substantial evidence, the ALJ's hypothetical posed to the VE must reflect all the claimant's limitations, which in turn must be supported by substantial evidence. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Where, as here, the parties do not dispute the VE accurately described a plaintiff's limitations in the assessed RFC, "an ALJ ordinarily may rely on the expert's testimony." *Leach v. Kijakazi*, 70 F.4th 1251, 1255 (9th Cir. 2023) (citing *White v. Kijakazi*, 44 F.4th 828, 833–34 (9th Cir. 2022)). "An exception exists, however, if there is an 'apparent conflict' between the expert's testimony and the Dictionary of Occupational Titles." *Id.* (citing *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015)). "If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the *Dictionary*, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Gutierrez*, 844 F.3d at 807 (citing SSR 00-4P, 2000 WL 1898704, at *2 (2000)). Consequently, the ALJ

---

[3] The DOT is "a resource compiled by the Department of Labor that details the specific requirements for different occupations." *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016). The SCO is a companion publication by the Department of Labor that provides coded descriptions of the requirements of occupations. *See* U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Part A (1993); Appendix D-2.

has a duty to "first determine whether a conflict exists" and, if a conflict is present, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4P, 2000 WL 1898704, at *2 (2000)); *see also Leach*, 70 F.4th at 1255 ("[T]he ALJ has an affirmative duty to ask the expert to explain the conflict and then determine whether the vocational expert's explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination.").

"[T]he conflict must be 'obvious or apparent' to trigger the ALJ's obligation to inquire further." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017). "This means that the testimony must be at odds with the *Dictionary's* listing of job requirements that are essential, integral, or expected." *Gutierrez*, 844 F.3d at 808. The ALJ's affirmative duty to ask follow-up questions is "fact-dependent," and "the more obscure the job, the less likely common experience will dictate the result." *Lamear*, 865 F.3d at 1205 (citation omitted). The Ninth Circuit has recognized "an ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC." *Id.*

## 2. VE's Testimony During the Hearing

At the outset of the VE's testimony, the ALJ requested the VE identify any inconsistencies between the VE's testimony and the DOT:

> [ALJ:] And if your testimony this afternoon isn't consistent with the DOT or the SCO you'll let us know?
>
> [VE:] Yes.

AR 2039. The ALJ then posed a hypothetical to the VE that matched Plaintiff's medical-vocational profile[4] and asked about availability of jobs in relevant part as follows:

_____

[4] Specifically, the ALJ posed the following hypothetical to the VE:

[ALJ:] Are there any jobs in the national economy with those limits that could be done, and if so would you give me three at the light, unskilled level?

[VE:] Yes. One example would be a hand packager, 920.687-018, SVP 1, light, the national numbers are 30,000. Another example would be a [sic] assembler, 706.684-022, SVP 2, light , and a third example would be --

[ALJ:] Oh job numbers on the assembler?

[VE:] Oh I'm sorry, Judge, 50,000, 5-0.

[ALJ:] Okay, and then the third job?

[VE:] And that would be an office helper, 239.567- 010, SVP 2, light, 13,000. Okay, you said not much interaction with coworkers, correct?

[ALJ:] I said occasional, so the social limitations are no interaction with the general public and only occasional work related non-personal, non-social interaction with coworkers and supervisors. Would that office helper job not apply based on those limits?

[VE:] Yeah, I would not use the office helper, but an alternative would be a material distributor, 230.687-010, SVP 2, light, 30,000.

---

Please assume a hypothetical individual that could do work at a light exertional level, the individual can occasionally climb ramps, stairs, . . . occasional [sic] climb ladders, ropes, scaffolds, occasional [sic] balance stoop, kneel, crouch and crawl, the individual must avoid concentrated exposure to bright light, loud noise, vibration and fumes, odors, gases, other pulmonary irritants, the individual can understand and remember, carry out simple, routine tasks, no interaction with the general public, only occasional work related non-personal, non-social interactions with coworkers and supervisors and would be limited to jobs requiring only simple work related decisions, however, [the individual] can keep pace sufficiently to complete tasks and meet quotas typically found in unskilled work.

AR 2040–41.

AR 2040–42. The ALJ then posed a second hypothetical adding a limitation of no interaction with coworkers and supervisors, and the VE confirmed the three jobs identified would not exist; nor would any jobs be available. AR 2042.

The ALJ then found the VE's testimony was consistent with information contained in the DOT pursuant to SSR 00-4p and adopted the VE's testimony at step five to conclude Plaintiff was capable of performing other work and thus was not disabled. AR 47.

### 3. Analysis

#### a. Material Distributor

First, Plaintiff asserts the ALJ erred in accepting the identification of the material distributor because the duties conflict with Plaintiff's RFC—specifically, the job tasks of going house to house, business to business, and interacting on the street have an apparent conflict with Plaintiff's limitation of no interaction with the general public. ECF No. 15 at 6. Plaintiff further maintains these duties are essential functions of a material distributor, and therefore the ALJ was required to resolve the apparent conflict before relying on the VE's testimony and accepting this identification. *Id.* Defendant asserts Plaintiff fails to show any apparent conflict because the SCO classifies the "People" category as "Not Significant" and the "Talking" category as "Not Present – Activity or condition does not exist." ECF No. 15 at 11. According to Defendant, the DOT's description does not require a worker interact with anyone, and thus substantial evidence supports the ALJ's identification of material distributor. ECF No. 15 at 11. In reply, Plaintiff asserts the RFC prohibits "interaction" with the public, which is broader than speaking. ECF No. 15 at 14.

The DOT's description of advertising-material distributor provides in relevant part "[d]istributes advertising material, such as merchandise samples, handbills, and coupons, from house to house, to business establishments, or to persons on street, following oral instructions, street maps, or address lists." DOT 230.687-010 (Advertising-Material Distributor), 1991 WL 672162. As the DOT specifically requires distributing advertising materials "from house to house, to business establishments" and perhaps most significantly "to persons on street," the Court finds it is likely and foreseeable that interacting with the

general public would be necessary to perform "essential, integral, or expected" tasks of the job. *See Lamear*, 865 F.3d at 1205. Other district courts have similarly concluded the advertising-material distributor job tasks require interaction with the public. *See, e.g.*, *Patricia K. v. Berryhill*, No. 6:17-CV-627-SI, 2018 WL 3745824, at *7 (D. Or. Aug. 7, 2018) ("An advertising material distributor, however, is required to interact with the public."); *Guembes v. Berryhill*, No. 16-CV-1950I, 2017 WL 4330779, at *9 n.2 (D. Or. Sept. 29, 2017).

Defendant argues Plaintiff attempts to manufacture a conflict where there is none. ECF No. 15 at 11. In particular, Defendant contends "there is no requirement in the job description that a worker interact with anyone" and therefore "a worker can accomplish the duties by, for instance, simply going house to house or business to business and placing samples, handbills, or coupons on the premises without ever interacting with the public." *Id.* The Court is not persuaded by this argument, particularly as Defendant omits reference to a key task at issue in the DOT's description—distributing materials to persons on the street. *See* 1991 WL 672162. In doing so, Defendant attempts to do precisely what the ALJ did not—reconcile the apparent conflict between the DOT's listed job tasks and Plaintiff's limitation of no public interaction by suggesting a worker can perform certain tasks—but not others—expected of a material distributor. Nothing in the record supports this, as the ALJ did not ask, and the VE did not testify as much.[5] *See Lamear*, 865 F.3d at 1206 ("Absent anything in the record to explain this apparent discrepancy, [the court] must reverse and remand so the ALJ can ask the VE to reconcile these jobs with [the plaintiff's] . . . limitations."); *see generally Garrison*, 759 F.3d at 1010 (recognizing a court is limited

---

[5] Defendant does not argue the ALJ satisfied his affirmative duty based on his question at the outset of the VE's testimony to have the VE identify if her testimony "isn't consistent with the DOT or the SCO." AR 2039. Nor would the Court accept such an argument. *See Lamear*, 865 F.3d at 1205 n.3 (quoting *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) ("The ALJ is not absolved of this duty [to reconcile conflicts] merely because the VE responds 'yes' when asked if her testimony is consistent with the DOT.")).

to reviewing "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely").

The Court finds the requirements listed in the DOT for material distributor seem to conflict with Plaintiff's limitation of no interaction with the general public; consequently, the ALJ was required to ask the VE to explain why there is no conflict between the DOT and Plaintiff's RFC before relying on the VE's testimony at step five. *See Lamear*, 865 F.3d 1205. The ALJ erred by failing to do so.

### b. Assembler

The ALJ also adopted the VE's identification of assembler, DOT 706.684-022, as a job that Plaintiff could perform given his RFC. The DOT's description of assembler provides:

> Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. **Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker.** Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line. May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor. May be known according to product assembled

DOT 706.684-022 (Assembler, Small Products I), 1991 WL 679050 (emphasis added).

Plaintiff contends the DOT's description requiring an assembler to "frequently work[] at bench as member of assembly group" conflicts with Plaintiff's limitation of "only occasional work-related, non-personal, non-social interaction with co-workers and supervisors." ECF No. 15 at 7. According to Plaintiff, by frequently working with a group, "workers frequently engage in teamwork." ECF No. 15 at 7. Defendant maintains there is

no apparent conflict between the DOT and the VE's testimony because an assembler "simply works as a member of an assembly line to produce small products." ECF No. 15 at 10. Relying on the DOT job description, Defendant asserts an assembler is required to "position[] parts in specified relationship to each other" using hand tools and "frequently does so at a 'bench as [a] member of a group assembling one or two specific parts and passing [the] unit to another worker." *Id.* Defendant also cites the SCO's classification of "Talking" as "Not Present – Activity or condition does not exist" and "People" as an "8 - Taking Instructions – Helping," which means "[a]ttending to the work assignment instructions or orders of supervisor (No immediate response required unless clarification of instructions or orders is needed.)." DOT Appendix B - Explanation of Data, People, and Things, 1991 WL 688701.[6]

The Court finds an apparent conflict exists between the VE's testimony and the DOT's description for assembler. Though the majority of the DOT's job description of assembler identifies various physical tasks on an assembly line for mass productions of small parts—"[p]ositions parts in specified relationship to each other, using hands, tweezers, or tongs[,]" "fastens parts together by hand or using handtools or portable powered tools[,]" or "[l]oads and unloads previously setup machines"—it also specifically requires that an assembler "frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker[,]" which means the condition could be necessary for as much as two-thirds of the workday. DOT 706.684-022 (Assembler, Small Products I), 1991 WL 679050. The DOT's description suggests some level of interaction would be required between members of the assembly group, such as coordinating "to pass the unit to another worker" within the group or to accomplish other

---

[6] In his reply brief, Plaintiff urges the Court to apply definitions of "talking" and "hearing" in the Revised Handbook for Analyzing Jobs (Labor 1991) (RHAJ) to find a conflict exists. An ALJ, however, is not required to resolve a conflict between the VE's testimony and information provided in the RHAJ. *Lewis v. Berryhill*, 708 F. App'x 919, 920 (9th Cir. 2018) (declining to hold a conflict with the RHAJ triggered SSR 00-4p's requirements).

3:23-cv-02140-AHG

tasks such as "shift[ing] from one station to another to reduce fatigue factor." *See id*. Plaintiff, however, is limited to only "occasional" interactions with coworkers and supervisors, meaning he can only interact with coworkers and supervisors no more than one-third of the workday, and the RFC further specifies such interactions must be limited to "work-related, non-personal non-social interactions." *See* AR 39. Based on the DOT's requirement of "frequently" working in assembly groups, it is unclear if an assembler would require interaction with coworkers or supervisors that exceeded Plaintiff's RFC.

Defendant argues "[t]he act of simply handing off a product to another worker down an assembly line does not require anything more than occasional work-related, non-personal, non-social interactions." ECF No. 15 at 10–11. But neither the DOT nor the VE's testimony establish interactions for an assembler are so limited, and the Court cannot determine based on common experience the level of interaction required for an assembler to perform the duties of "[f]requently work[ing] at bench as member of assembly group assembling one or two specific parts and passing unit to another worker." 1991 WL 679050; s*ee Lamear*, 865 F.3d at 1205; *Masterson v. Berryhill*, No. 16-CV-01300-GPC-WVG, 2017 WL 3575525, at *4 (S.D. Cal. Aug. 18, 2017) (finding the small parts assembler position "while not obscure, [is] not so commonplace that 'common experience' can easily resolve the conflict"); *Michael Louis W. v. Kijakazi*, No. 20-CV-2277-LL(MSB), 2022 WL 2701988, at *19 (S.D. Cal. July 12, 2022), *report and recommendation adopted,* 2022 WL 2918613 (S.D. Cal. July 25, 2022) (finding the Court cannot rely on common experience to resolve an apparent conflict because the duties of an assembler "are not commonly known to the public"). Further, to the extent Defendant suggests the SCO classifications preclude a conflict in the case at hand, the Court is not persuaded. Rather, the Court agrees with Plaintiff that under the Social Security regulations, talking is not coextensive with the ability to interact with others. Indeed, the Agency defines the "interacting with others" area of mental functioning as the ability to "relate to and work with supervisors, co-workers, and the public" and gives examples including "[c]ooperating with others; asking for help when needed; handling conflicts with others; . . . understanding

and responding to social cues [and] responding to requests, suggestions, criticism, correction, and challenges . . . ." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part-A2, 11.00E. And while a "People" classification of 8 signifies worker functions involve less complicated responsibility and judgment, *see* DOT, Parts of the Occupational Definition, 1991 WL 645965, it does not prevent the existence of a conflict here where the DOT description expressly requires an assembler to "frequently" work as an assembly group member, Plaintiff's RFC is limited to only "occasional" work-related, non-personal, non-social interactions with coworkers and supervisors, and neither the DOT, the VE testimony, or common experience addresses the extent of interactions required between assembly group members in a workday.

Though neither party cited other cases addressing this issue, the Court notes other courts in the Ninth Circuit have reached varying conclusions regarding whether the DOT's requirement of "[f]requently work[ing] at bench as member of assembly group" seems to conflict with an RFC limiting a claimant to only occasional interactions with coworkers or supervisors. For example, in *Veteto v. Colvin*, No. 6:13-CV-00298-MO, 2014 WL 412414, at *4 (D. Or. Feb. 3, 2014), the district court found the DOT's description was ambiguous as to whether and when workers were required to "frequently" work in assembly groups and did not indicate the nature of the interaction with coworkers—thus it was unclear whether the job required more than "occasional" coworker interaction. *See id.*; s*ee also Sloss v. Colvin*, No. 6:14-CV-00954-SI, 2015 WL 4628144, at *6 (D. Or. Aug. 3, 2015) (finding the ALJ erred by not asking the VE how much interaction would be required); *Eric K. v. Kijakazi*, No. 8:20-CV-01507-SP, 2022 WL 991897, at *7 (C.D. Cal. Mar. 31, 2022) ("Plaintiff's limitation to occasional contact with coworkers also appears to conflict with the DOT description requiring frequent work as a member of an assembly group.").

On the other hand, in *Lichtner v. Colvin*, No. SA CV 14-1504-SP, 2016 WL 1274089, at *6 (C.D. Cal. Mar. 31, 2016), the court found no conflict existed between the same job task and the plaintiff's limitation of "occasional contact with coworkers or supervisors." *Id.* The court explained "there is no reason to suppose that working by oneself

to assemble one or two parts and then passing the unit to the next coworker involves significant contact with a coworker in the sense meant here, or at least more than occasional contact, particularly given the SCO's description of the position." *Id.* Distinguishing *Veveto*, the court found any vagueness in the DOT's description did not create an apparent conflict with the VE's testimony requiring the ALJ to reconcile. *Id.* Moreover, the court found to the extent there was a conflict, the ALJ sufficiently explored it, as the VE testified, based on his personal observation of the way the small product assembler job is performed, the claimant's social limitation would not preclude him from performing the position locally. *Id.*; *see also Cruz v. Berryhill*, No. 16-CV-05910-PJH, 2017 WL 6450491, at *18 (N.D. Cal. Dec. 18, 2017) (finding no obvious or apparent conflict between a claimant's limitation to occasional interaction with coworkers and the demands of the assembler job).

The Ninth Circuit has also addressed this issue in an unpublished opinion. *See Spears v. Saul*, 842 F. App'x 107, 109–10 (9th Cir. 2021). There, a VE testified that a person with the claimant's RFC and characteristics could work as an assembler of small products. During the hearing, the plaintiff's attorney questioned the VE as to whether the plaintiff's limitation on interacting with coworkers would restrict her ability to perform the position based on the same job task requiring frequent work in an assembly group. The VE confirmed the plaintiff "could still perform jobs involving bench work, as such jobs do not require being around many people." *Id.* at 109. Relying on this explanation from the VE, the Ninth Circuit concluded there was no "obvious or apparent" conflict between the VE's testimony and the plaintiff's RFC limitations. *Id.* at 109–10.

Here, however, the Court cannot conclude based on this record, the DOT, or common experience whether the assembler position in question, and in particular the task of "frequently" working in an assembly group, is limited to only "occasional" work-related, non-personal, non-social interactions with coworkers and supervisors. Further, unlike in *Litchner* or *Spears* discussed above, the VE did not provide any testimony regarding how the assembler role is performed or state that her understanding of the job was based on personal observation; nor did the ALJ make inquiries to ensure Plaintiff could perform the

job despite his limitations to only occasional interactions with coworkers and supervisors. Thus, the Court finds an apparent conflict exists between the VE's testimony here and the DOT, and the ALJ should have made further inquiries of the VE before relying on her testimony at step five.

### c. Hand Packager

Finally, the ALJ adopted the VE's identification of the DOT job title "Hand packager" along with DOT job number 920.687-018. AR 47. Plaintiff contends substantial evidence does not support the ALJ's finding because the job title identified by the VE of hand packager does match the DOT job number identified by the VE of 920.687-018, which is for the "Bagger" position—a light, unskilled occupation. DOT 920.687-018 (Bagger), 1991 WL 687965. In reality, the hand packager position is 920.587-018—one number off—requiring medium exertion, which exceeds Plaintiff's RFC. *See* 920.587-018 (Packager, Hand), 1991 WL 687916. Plaintiff contends the record is not clear whether the VE intended either the hand packager or bagger position, and therefore substantial evidence does not support the ALJ's identification of "hand packager" at step five.

Defendant contends the Court is entitled to draw a reasonable inference from the record that the VE intended to identify the DOT job number 920.687-018, the bagger position, based on the ALJ's request for the VE to identify "light, unskilled" positions. ECF No. 15 at 12–13; *see* AR 2041. Only the job number identified by the VE fits the hypothetical, whereas the job title "hand packager" is a medium level position. *Id.* Plaintiff counters that this discrepancy is not a scrivener's error and maintains it is not possible on this record to determine the VE intended the occupation name or the DOT code cited. ECF No. 15 at 16.

Here, the VE identified a DOT job title that did not match the job number she identified, and the ALJ adopted this inconsistency in his step five findings. Given this discrepancy was in the VE's testimony itself, it is not merely a scrivener's error. Further, as this discrepancy relates to a material issue in dispute—the hand packager position exceeds Plaintiff's RFC while the bagger position does not—the Court declines to simply

infer the ALJ met its burden at step five to identify other jobs Plaintiff could perform despite his limitations and conclude Plaintiff was not disabled. Thus, the VE's testimony does not constitute substantial evidence to support the ALJ's identification of this occupation at step five.

Finally, Defendant argues any error was harmless, as each occupation "clears the Commissioner's burden at step five" based on the Ninth Circuit's threshold of at least 25,000 jobs is sufficient. ECF No. 15 at 11 (citing *Gutierrez*, 740 F.3d at 527). The Court finds this argument moot in light of its findings set forth above that there is reversible error with respect to each of the three jobs identified at step five.

## B. Whether the ALJ Stated Legally Adequate Reasons for Rejecting Plaintiff's Symptoms and Limitations

Plaintiff next argues that the ALJ erred by discounting his testimony regarding the intensity, persistence, and limiting effects of his symptoms. ECF No. 15 at 17-22. Plaintiff attests that the activities of daily living cited by the ALJ are not inconsistent with Plaintiff's asserted limitations in sitting, standing, walking, lifting, and interacting with others, and that if his testimony were credited as true, Plaintiff would be unable to perform any jobs available in the national economy. *Id.* at 22.

The Commissioner responds that the ALJ's rationale for not fully crediting Plaintiff's subjective symptom testimony is supported by substantial evidence. *Id.* at 23-26. Defendant argues the ALJ highlighted medical evidence that contradicted Plaintiff's testimony regarding his purported difficulties in talking or understanding, getting along with people outside of his immediate family and anger problems, and focusing and staying on task. *Id.* at 23-24. Further, the ALJ highlighted evidence showing that Plaintiff's symptoms improved with treatment, and Defendant argues the ALJ properly found that Plaintiff's activities of daily living including caring for his mother and lifting weights were inconsistent with his allegations of disabling limitations. *Id.* at 24-25. Finally, Defendant notes that the ALJ properly relied on his observations of Plaintiff's functioning at the

hearing to find that Plaintiff was not as limited in focus, attention, and staying on task as alleged. *Id.* at 25.

The Court will discuss the applicable legal standards and summarize Plaintiff's relevant testimony regarding his symptoms before addressing whether the ALJ erred in his evaluation of the testimony.

### 1. Legal Standards for Evaluating Subjective Symptom Testimony

An ALJ evaluating a claimant's subjective complaints must follow a two-step inquiry. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). First, an ALJ must assess whether there is objective medical evidence to support the complaints. *Id.* At the first step, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; rather, she need only show that it could reasonably have caused some degree of the symptom. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1014). Nor is the claimant required to produce objective medical evidence of the symptoms alleged, or the severity of those symptoms. *Id.* If the claimant satisfies the first step, and there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). An ALJ must "specifically identify the testimony she or he finds not to be credible ... and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). An ALJ's decision must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony[.]'" *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991).

If the ALJ fails to meet these requirements for specificity, the Court is not free to fill in the gaps. *Lambert*, 980 F.3d at 1278. It is solely within the ALJ's province to assess the credibility of the claimant's testimony. *Id.* A court is therefore "constrained to review the

3:23-cv-02140-AHG

reasons the ALJ asserts." *Id.* (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

### 2. Plaintiff's Testimony

The record contains Plaintiff's description of his mental health symptoms in an Exertion Questionnaire dated February 3, 2022 (AR 472-74); a Fatigue Questionnaire dated February 3, 2022 (AR 475-76); a Disability Report that is undated but appears to have been completed in 2022 (AR 477-91); and a Function Report dated February 22, 2022. AR 492-520. Plaintiff's description of his symptoms is consistent across these reports.

Plaintiff's daily activities are limited. AR 472, 475. He does not leave his home unless he is going to the doctor. AR 472, 496. He shops online or goes to the grocery store late at night to avoid interactions with people. AR 472, 496. He has difficulty sleeping because of PTSD-related flashbacks, and he has to nap during the day. AR 474, 475, 479. He has difficulty finishing housework and chores. AR 474, 475. His sister helps remind him to take his medications, and brings him food. AR 495, 496.

Plaintiff has problems relating to other people. He can be hostile and provoke fights. AR 497. When he is upset, he has thrown or punched things. AR 474. He is afraid of other people. AR 475, 499. He has difficulty maintaining concentration and staying on task. AR 476. Although he rates himself as "ok" at following oral instructions, he states that he does not follow written instructions well. AR 498. He does not handle stress or changes in routine well. AR 499.

At the hearing before the ALJ, it appears that Plaintiff's living circumstances had changed because instead of living alone, he was married. AR 2012. His wife is a registered nurse who supports him. AR 2023. Plaintiff expressed a sense of hypervigilance, stating "I always got to be alert, you know, I have cameras out on my house, I can't trust anyone out there." AR 2023. Plaintiff described having a "timeout room" in his house where his wife has trained him to go when he feels triggered and angry. AR 2023. Plaintiff takes Sertraline, which helps calm him down, but also makes him sleepy. AR 2024. Plaintiff

visits his elderly mother 3 to 4 times per week. AR 2025. Plaintiff's sister is responsible for caring for his mother. AR 2025. Plaintiff stated that he "can't care for her, I can't care for myself sometimes." AR 2025. Plaintiff limits his interactions to family members and his best friend. AR 2026. His wife reminds him to shower. AR 2027. He does not prepare meals for himself. AR 2028. He can go to the grocery store with his wife, but limits trips to 30 minutes. AR 2028.

### 3. The ALJ's Reasons for Rejecting Plaintiff's Testimony

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of his symptoms, satisfying the first step of the inquiry. AR 40. The ALJ found no evidence of malingering. The ALJ was therefore required to state "specific, clear and convincing reasons, supported by substantial evidence from the administrative record" for rejecting Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms. *Austin v. Saul*, 840 F. App'x 899, 901 (9th Cir. 2020) (quoting *Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (punctuation omitted)).

#### a. Failure to Identify Inconsistent Testimony

An ALJ is required to "specifically identify the testimony … he finds not to be credible and … explain what evidence undermines the testimony." *Lamber*, 980 F.3d at 1277. Here, the ALJ made a boilerplate statement regarding Plaintiff's testimony that is commonly found in ALJ decisions:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

AR 40. Courts have found this same language to be too general and boilerplate to satisfy the requirement that an ALJ identify the testimony of the claimant that should be

3:23-cv-02140-AHG

discredited. In *Lambert*, for example, the Ninth Circuit found that identical boilerplate language was insufficient to meet the ALJ's burden:

> The ALJ's decision does not meet the requirements set forth in our cases and does not permit meaningful review. The ALJ noted generically that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence in the record for the reasons explained in the decision." But this "boilerplate statement" by way of "introductory remark," which is "routinely include[d]" in ALJ decisions denying benefits, did not "identify what parts of the claimant's testimony were not credible and why."

*Lambert*, 980 F.3d at 1277; *Burrell*, 775 F.3d at 1138 (general statement that testimony is "inconsistent in some unspecified way" is insufficient); *Treichler*, 775 F.3d at 1103 (9th Cir. 2014) (noting that identical boilerplate statement was insufficient because the "ALJ must identify the testimony that was not credible").

The problem with this language is that the phrase "statements concerning the intensity, persistence and limiting effects" is too general a description for the Court to understand precisely what portions of Plaintiff's testimony are claimed to be inconsistent with other evidence in the record. *Isis A. v. Saul*, No. 18cv01728-W-MSB, 2019 WL 3554969, at *4 (S.D. Cal. Aug. 5, 2019) ("When an ALJ fails to specify the rejected testimony and how the evidence provides clear and convincing reasons to reject it, the reviewing court cannot proceed without 'substitut[ing its own] conclusions for the ALJs, or speculat[ing] as to the grounds for the ALJ's decision.") (quoting *Treichler*, 775 F.3d at 1103). Plaintiff's chief complaints are that he has problems interacting with other people, anger issues, depression, and sleep issues due to PTSD and flashbacks because of his mental illness. In addition to his mental health symptoms, Plaintiff complains of back pain that causes sitting, standing, and lifting limitations, as well as migraines. These symptoms and effects are different and cannot be treated as a unitary complaint. This leaves the Court to attempt to ascertain whether the evidence relied on by the ALJ is inconsistent with any, or all, of these symptoms and effects. That alone is reversible error. *Lambert*, 980 F.3d at 1278. Nonetheless, to the extent the ALJ expounded upon his rationale for discrediting

3:23-cv-02140-AHG

Plaintiff's testimony in later portions of the opinion, the Court will address the evidence discussed by the ALJ to determine whether it provides a sufficient basis to meet the "specific, clear, and convincing reasons" standard.

### b.  Plaintiff's Mental Health Treatment Notes

With respect to Plaintiff's mental health impairments specifically, the ALJ found that "the evidence in the record fails to demonstrate functional deficits that exceed the functional limitations of the established residual functional capacity above." AR 40. The ALJ then summarized treatment notes from several mental health appointments. AR 40-42. After summarizing the treatment notes, that ALJ repeated the conclusory statement: "Thus, the mental health evidence in the record fails to demonstrate functional deficits that exceed the functional limitations of the established residual functional capacity above." AR 42. The ALJ was required to do more, however, than merely summarize the record and then present a generic conclusion. *See Treichler*, 775 F.3d at 1103 (requiring the ALJ to identify "what parts of the claimant's testimony were not credible and why" and rejecting the agency's argument that the Court could merely infer that the ALJ rejected the testimony to the extent it conflicted with the medical evidence summarized by the ALJ); *Ferguson v. O'Malley*, 95 F.4th 1194, 1199-1201 (9th Cir. 2024) (requiring the ALJ to "expressly and specifically state[]" which symptom testimony was inconsistent with which particular record evidence, and noting that "we have repeatedly held, at step two of the symptom analysis, the ALJ cannot rely on an *absence* of positive medical evidence to discredit a claimant's subjective symptom testimony.") (emphasis in original). The ALJ failed to provide any explanation for why his summary of the treatment notes supports his conclusion that Plaintiff's reported mental health symptoms are inconsistent with the record and should be disregarded. This is particularly problematic because even the ALJ's summaries indicate that portions of the notes are supportive of Plaintiff's testimony. *E.g.*, AR 40 ("sad and anxious mood with constricted affect" at 10/20/21 examination); AR 41 (Plaintiff "presented as shirtless and under-groomed with constricted mood" at a 2/22/22 mental health evaluation); AR 41 ("hostile and angry attitude" at a 9/18/22 examination);

3:23-cv-02140-AHG

AR 42 (plaintiff "endorsed symptoms of PTSD due to witnessing an aircraft crashing into a flight deck along with symptoms of hypervigilance, daily nightmares, and flashbacks."). The ALJ made no attempt to explain why he gave greater weight to certain portions of the record to find Plaintiff's mental health symptoms were less severe than he reported when other portions supported Plaintiff's testimony.

The ALJ's summary is also problematic because there are significant gaps. For example, the ALJ summarized the notes from a mental status examination with Dr. Carmellia Clark on October 20, 2021. The ALJ noted that Dr. Clark "reported the claimant had a sad and anxious mood with constricted affect, but Dr. Clark also reported the claimant had coherent and articulate speech and had normal thought process," and "was oriented as to person, place, and situation." AR 40. The ALJ did not mention that the notes for that examination also indicate passive suicidal ideation that required "hi level assessment for suicide risk" and ratings of "high severity" for Plaintiff's depression, PTSD, and anxiety. AR 788-89. The ALJ also did not mention the notes from a subsequent examination by Dr. Clark on November 11, 2021. AR 790. These notes indicate that a different therapist called police to do a wellness check on Plaintiff and said that he "needs to complete an anger management class before she'll see him again." AR 790. The notes also state that Plaintiff was "furious over the wellness check but apparently he'd had some [suicidal ideations] at the time." AR 790. Dr. Clark described Plaintiff at the November 11, 2021 examination as having an "angry mood" and passive suicidal ideations. AR 791.

As another example of the ALJ's mischaracterization of the record, the ALJ also summarized the notes from mental health appointments with Plaintiff's psychiatrist, Dr. Flood, on February 11, 2022 and December 9, 2022. AR 41. The ALJ's summary of the February 2022 appointment states that medication was helping Plaintiff's symptoms and he "had logical and goal directed thought process, regular speech, and calm and cooperative attitude," and was "alert and oriented as to person, place, and situation and did not appear to be responding to internal stimuli." AR 41. The ALJ's summary of the December 2022 appointment notes that "Dr. Flood reported the claimant's attitude was

calm and cooperative with no evidence of agitation or psychomotor agitation" and that Plaintiff "had good insight and judgment." AR 41.

The ALJ makes no mention, however, of Dr. Flood's treatment notes from an appointment on August 31, 2022, that paint a very different picture of Plaintiff's mental health. AR 1486. Dr. Flood's assessment at that appointment was that Plaintiff "seems to have some sort of baseline psychosis and paranoia that is not part of PTSD." AR 1490. Dr. Flood also noted that the "effects on psychiatric symptomatology on overall functioning" were "severe." AR 1491. Dr. Flood made the same notes in the December 9, 2022 appointment notes, AR 1391-1392, but the ALJ failed to mention those in his summary altogether.

### c. Plaintiff's physical health treatment notes

Turning to Plaintiff's physical impairments, the ALJ again repeated his conclusion that "the evidence in the record fails to demonstrate functional deficits that exceed the functional limitations of the established residual functional capacity above." AR 42. In support, the ALJ cited to a February 15, 2022 MRI that "showed no acute intracranial abnormality" and noted that Plaintiff's treating physician "determined that the MRI results were not sufficient to show a cause for the claimant's reported migraines." AR 42. The ALJ proceeded to summarize additional treatment notes from throughout 2022 and early 2023 pertaining to Plaintiff's migraines, physical therapy, for his back, and problems with vision and sleep. AR 42-43. The ALJ discussed (1) a June 24, 2022 visit in which Plaintiff's physician assessed him with migraine headache, but reported Plaintiff "was alert and oriented as to person, place, and situation and reported the claimant appeared to have no focal deficits"; (2) a June 29, 2022 physical therapy evaluation during which Plaintiff presented with a back injury from falling down a hill 14 years prior, reported recreational activities of lifting weights, and was noted to have "an antalgic gait and decreased sensation in the left lower extremity and decreased trunk rotation" and was recommended a program of home exercise and manual therapy; (3) a September 15, 2022 physical therapy visit in which Plaintiff's physician reported that goals from physical therapy were ongoing and

Plaintiff would continue therapy for another 12 weeks; (4) a December 14, 2022 visit to the VA where Plaintiff complained of migraines at least once per week, although the examining optometrist found that Plaintiff's visual acuity was 20/20 in both eyes and Plaintiff had only mild photophobia and mild convergence; (5) a November 25, 2022 visit to the VA where Plaintiff complained of gasping during sleep, but other symptoms were negative, and the treating physician assessed him with untreated obstructive sleep apnea; (6) a March 23, 2023 optometry exam showing Plaintiff's eyes "were within normal limits." AR 42-43.

After this summary of treatment notes, the ALJ reiterated the same statement: "Thus, the objective medical evidence fails to demonstrate functional deficits that exceed the functional limitations of the established residual functional capacity above." AR 43.

As an initial matter, it is not enough for the ALJ to reject or discount a claimant's subject symptom testimony based solely on a lack of objective medical evidence to corroborate it. The Ninth Circuit has affirmed this standard time and time again. *See Ferguson*, 95 F.4th at 1201 ("[W]e have repeatedly held, at step two of the symptom analysis, the ALJ cannot rely on an *absence* of positive medical evidence to discredit a claimant's subjective symptom testimony."); *Smartt v. Kijakazi*, 53 F.4th 489, 495 (9th Cir. 2022) ("[A]n ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony.") (citation omitted); *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) ("An ALJ, however, may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged."). Rather, the ALJ must find that the objective medical evidence in the record is *inconsistent with* the claimant's subjective symptom testimony in order to discount the testimony. *Smartt*, 53 F. 4th at 498; *Ferguson*, 95 F.4th at 1201. The ALJ does not explain which, if any, of these treatment notes is inconsistent with which aspects of Plaintiff's symptom testimony.

Moreover, the Court cannot easily discern or infer any inconsistencies from the descriptions provided. The ALJ described Plaintiff's subjective symptom testimony regarding his physical impairments as follows:

> The claimant reported he experiences back pain, but reported he has not undergone a radiograph such as an MRI on his back. The claimant estimated he can stand in one place for about 10 minutes and would need to sit down for 10 minutes before he could stand again. The claimant testified that he can sit for about 10 minutes before needing to get up and stretch. The claimant reported he receives physical therapy for his back. The claimant estimated he can lift about 20 pounds of weight. The claimant reported he hit his head in 2016 and experiences pain from headaches as a result.

AR 40. It is not at all apparent to the Court which, if any, evidence from the treatment notes cited by the ALJ is inconsistent with any of the above reported symptomology. Therefore, the Court cannot accept the ALJ's reliance on any of these treatment notes as a specific, clear, or convincing reason to discount Plaintiff's subjective symptom testimony regarding his physical limitations.

### d.  Plaintiff's activities of daily living

Next, the ALJ stated that Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms [] are inconsistent with the longitudinal record" because "[t]he record shows the claimant was able to perform a variety of activities of daily living that are inconsistent with disabling functional limitations." AR 43.

"With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting." *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a)). "As explained in *Fair*, however, this line of reasoning has its limits. The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Id.* Therefore, a claimant's activities of

daily living "can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's 'other testimony' or if those activities are transferable to a work setting." *Heilman v. Colvin*, No. 2:15-CV-00187-MKD, 2016 WL 4408993, at *6 (E.D. Wash. Aug. 17, 2016).

Here, the ALJ specifically noted that Plaintiff "reported no difficulties performing personal care activities such as bathing and grooming" in his Function Report and testified that "he is able to care for his own personal care activities such as bathing and toileting" at the hearing. AR 43. The ALJ further cited to January 5, 2022 mental health records showing that Plaintiff was caring for his mother with Parkinson's Disease and a June 29, 2022 report of lifting weights recreationally. AR 43. The ALJ concluded that these activities of daily living "are not consistent with the allegations of disabling symptoms and limitations." AR 43.

However, as discussed above, the ALJ must specify *which* of Plaintiff's purported symptoms are inconsistent with *which* record evidence. *Ferguson*, 95 F.4th at 1200. "[T]o satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony." *Id.* (emphasis in original). While the Court can discern that evidence related to lifting weights could be inconsistent with testimony that Plaintiff is unable to lift any amount of weight, Plaintiff never provided such testimony. Rather, Plaintiff stated during the hearing that he can lift "about 25 pounds to 20 pounds" at a time. AR 2038. In the same treatment notes where Plaintiff stated that he lifts weights as a recreational/exercise activity, he also states that he does not engage in repetitive lifting, lifting moderate weights, or lifting heavy weights. AR 1999, 2001. These treatment notes also show that Plaintiff was pursuing physical therapy in order to combat the limitations from his impairments, including limitations on his ability to engage in recreational weight lifting (in addition to walking, climbing stairs, standing for long periods of time, sleeping, and all activities of daily living). AR 2003. Other record evidence shows that Plaintiff was noted to have a "sedentary activity level" with his sole reported exercise being once-weekly

weight lifting. AR 749. Therefore, it is not clear which portions of Plaintiff's testimony regarding the severity of his symptoms the ALJ finds to be inconsistent with the record evidence he cites.

More importantly, even if the Court accepted the ALJ's reasoning for discounting Plaintiff's testimony regarding his physical impairments based on his ability to bathe, groom himself, use the toilet, and lift weights, as the ALJ himself recognized during the hearing, "the thrust of the case" is Plaintiff's "mental issues" rather than his physical limitations. AR 2017. As discussed above, Plaintiff's testimony includes claims that he has difficulty sleeping due to PTSD and has to nap during the day, he needs reminders to take medications, he has difficulty finishing housework and chores, he has problems relating to other people and becomes hostile and violent at times, he has difficulty maintaining concentration and staying on task, he does not follow written instructions well, he does not handle stress or changes in routine well, and he experiences hypervigilance. The ALJ does not explain how Plaintiff's abilities to bathe, toilet, groom himself, or lift weights are inconsistent with any of these claims.

As for Plaintiff's purported ability to care for his mother, the treatment record cited by the ALJ on this point is from a telephonic check-in and safety assessment performed by a mental health provider at the VA following a suicide attempt a few months prior. AR 812. During the phone call, Plaintiff "explained that while he does care for his mother with [P]arkinson[']s he does not live with her. Veteran reported, 'My sister lives with my mom, I just see her for lunch and dinner when I go there to feed her." AR 812. This treatment note is consistent with Plaintiff's testimony during the hearing that he does not live with his mother but visits her three or four times a week and helps her financially. AR 2025. He reported that his sister is his mother's primary caregiver because "I can't care for her, I can't care for myself sometimes." AR 2025. Therefore, the ALJ's characterization of this treatment note as evidence that Plaintiff "was caring for his mother who has Parkinson's Disease" is inaccurate. And in any event, the ALJ does not explain how Plaintiff's ability to bathe, groom himself, use the toilet, and help his mother with financial support and

periodic meals is inconsistent with any of his subjective symptom testimony regarding the severity of his mental health impairments. Nor is it clear how these activities of daily living are transferable to a work setting. *See Smolen*, 80 F.3d at 1284 n.7; *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012), *superseded on other grounds* by 20 C.F.R. § 404.1502(a) ("While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting") (internal quotations and citations omitted).

Because the ALJ failed to explain how Plaintiff's activities of daily living were either inconsistent with Plaintiff's other testimony or transferable to a work setting, the ALJ's reliance on that evidence to discount Plaintiff's testimony does not meet the "specific, clear, and convincing reasons" standard. The Court accordingly finds error on this point.

## V.    APPROPRIATE REMEDY

The Court finds that the ALJ committed reversible error by rejecting Plaintiff's testimony without providing specific, clear, and convincing reasons for doing so, and also failed to meet its burden at step five of identifying other jobs Plaintiff can perform.

The only remaining question for the Court is whether to remand for further administrative proceedings or for the payment of benefits. "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)); *Garrison*, 759 F.3d at 1019. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

If an ALJ's error is harmless, his decision will not be reversed. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." *Id.* at 1115 (quoting *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008)). The ALJ's errors were not harmless, because they impacted the RFC formulated by the ALJ.

The incorporation of the mental limitations of "only occasional work-related, non-personal, non-social interaction with co-workers and supervisors" in the RFC does not cure the ALJ's errors here. If Plaintiff's testimony is credited fully, the record does not support a finding that he could work. When the ALJ posed a second hypothetical adding a limitation of no interaction with coworkers and supervisors, which accurately reflects Plaintiff's symptom testimony, the VE confirmed that there would be no work available. AR 2042. Thus, the ALJ's error was not harmless.

The Court applies the "credit-as-true" rule when determining whether a case should be remanded for payment of benefits or for further proceedings. *Trevizo*, 871 F.3d at 682. That test requires the court to assess three factors: (1) whether "the record has been fully developed and further administrative proceedings would serve no useful purpose;" (2) whether "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;" and (3) whether "the ALJ would be required to find the claimant disabled on remand" if the discredited evidence were treated as true. *Id.* at 682–83 (quoting *Garrison*, 759 F.3d at 1020). If all three factors are present, a court can remand the case for payment of benefits. *Burrell*, 775 F.3d at 1141.

The first factor weighs in favor of a remand for benefits. The record is sufficiently developed. The second factor weighs in favor of a remand for benefits because, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony. The third factor also weighs in favor of a remand for benefits because the VE testified that there would be no work available if Plaintiff's testimony were credited fully. Remanding for further consideration "would create an unfair 'heads we win; tails, let's play again'" system of disability benefits adjudication" and is unwarranted in light of the record that already exists with respect to Plaintiff's claim for benefits. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

Therefore, weighing the applicable factors, the Court finds the appropriate remedy here is to reverse the Commissioner's decision and remand for an immediate award of benefits.

## VI. CONCLUSION

Based on the foregoing analysis, the Court resolves the parties' Joint Motion for Judicial Review (ECF No. 15) in Plaintiff's favor. The Court hereby **REVERSES** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDS** this action for an immediate award of benefits.

The Clerk shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED**.

Dated: March 27, 2025

Honorable Allison H. Goddard
United States Magistrate Judge